**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carlos Jesus FIGUEROA,
Defendant-Appellant.**

**No. 81–5125.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 1, 1982.

---

Robyn Hermann, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

C. Wesley G. Currier, Asst. U. S. Atty., Miami, Fla., Patty Merkamp Stemler, Washington, D. C., for plaintiff-appellee.

Before VANCE, KRAVITCH and CLARK, Circuit Judges.

VANCE, Circuit Judge:

Carlos Jesus Figueroa appeals his conviction of attempted aircraft piracy in violation of 49 U.S.C. § 1472(i)(1) and his sentence to the statutory minimum of twenty years imprisonment.

### The Facts

The case arose from events which transpired on September 14, 1980 when Figueroa was aboard Eastern Airlines Flight 115 travelling from Tampa to Miami. About fifteen minutes prior to landing Figueroa handed the flight attendant a note and asked that she give it to the captain. The note in unedited form was as follows:

This is a request to take me to *Cuba* . . . *Now*!

This aircraft is in no danger. But don't take any chances. The life of many people is in your hands.

A powerfull explosive device is set to *go-off on pre-set time* in a public location in Tampa. Many inocent people are goin to die—Any loss of life as a result of *your* haste and negligence and this airline management will be your responsibility. Copy of this note is in the mail to all major T-V networks news media, relatives and friends—They will know what happen in the ground and, who can help at the time *Once in Cuba-Not Before.* I will tell you exact location and *how* to disarm safely the device.

*Time is essential.*

THANKS—Carlos

The attendant took the note to the cockpit where it was read to the captain. An-

other Eastern pilot, Captain Laurie Hosford, was "dead heading" on the flight and occupied the observer's seat. Hosford went back to the cabin and told Figueroa that they did not have enough fuel to go to Cuba and that they would stop in Miami for fuel. Figueroa did not object. Hosford returned to the cockpit but shortly came back and sat by Figueroa for the remainder of the flight. He asked Figueroa why he was doing this, telling him that he could find another way to go to Cuba. Figueroa said he had lost everything and was totally broke. A passenger said something about people on the airline being in danger and he said that was the way things had to be. He apologized three or four times, however, for causing inconvenience. When the plane landed at Miami Figueroa was arrested by the Dade County Police. Figueroa was described as being between five feet five inches and five feet seven inches tall and weighing 135–145 pounds. When arrested he offered no resistence whatever. He was carrying no weapon.

### The Insanity Issue

Figueroa has a history of mental illness which extends back over ten years. He has required hospitalization and electroshock treatment. At trial and in this court Figueroa contends that the evidence will not support a finding beyond a reasonable doubt that he was legally sane at the time of the offense in question.

Expert witnesses for both the government and the defense agreed that Figueroa suffered from severe depression. They differed, however, in testimony critical to application of the standard adopted in *Blake v. United States*, 407 F.2d 908, 916 (5th Cir. 1969) (en banc). Defendant's psychiatrist expressed the opinion that Figueroa suffered from schizophrenia, schizo-affective type that rendered him unable to appreciate wrongfulness and adhere to a realistic, mature way of deciding and functioning. The government's psychiatrist testified that although Figueroa was depressed to the point

of extreme apathy, he was fully aware that his conduct was wrong and was capable of conforming his conduct to the requirements of the law if he chose to do so.

■ The thrust of Figueroa's contention is that in light of such conflict of expert testimony and of the lay testimony concerning his history of aberrant behavior the jury must necessarily have had a reasonable doubt of his sanity. We conclude, however, that the issue was properly one for the jury's determination. It was free to accept or reject the testimony of either expert. As with other issues, we view the evidence on appeal in the light most favorable to the government with all inferences and credibility choices made to support the jury's verdict. *United States v. Iverson*, 588 F.2d 194, 196 (5th Cir. 1979). The evidence was not such that a reasonably minded juror must necessarily have had a reasonable doubt as to Figueroa's sanity at the time of the offense. *See United States v. Hall*, 583 F.2d 1288, 1294 (5th Cir. 1978). The jury's verdict on the insanity issue, therefore, will not be disturbed.

### Sufficiency of the Evidence

The statute defines aircraft piracy as "any seizure or exercise of control, by force or violence or threat of force or violence, or by any other form of intimidation, and with wrongful intent, of an aircraft." 49 U.S.C. § 1472(i)(2). The indictment charged only that Figueroa "did attempt to seize, *by force and violence*, an aircraft" (emphasis added). At defendant's request the trial judge charged the jury that attempted aircraft piracy necessarily includes the lesser offense of interference with flight crew members or flight attendants in violation of 49 U.S.C. § 1472(j). The court instructed on the elements of the lesser included offense and provided a form of verdict for use if the jury found Figueroa not guilty of the charged offense but guilty of the lesser included offense. The jury found defendant guilty as charged.

Figueroa challenges the sufficiency of the evidence that resulted in his conviction. He concedes his use of the note proved that he used threats and intimidation in an attempt to hijack the aircraft. Clearly, if he had been so charged, the evidence would be sufficient to convict him. Figueroa asserts, however, that the government presented no evidence that he committed the offense with which he was actually charged, namely, attempted hijacking by force and violence. He claims that the government failed to show that he made any physical gesture which constituted force or violence within the traditional meaning of those terms.

The government contends that Figueroa's act of threatening imminent harm to innocent persons is sufficient to establish the element of force as charged and that evidence of physical action is not required. It argues that a note calculated to compel the pilot to change destinations against his will was clearly sufficient to constitute force.

The difficulty with the government's argument is that it assumes Congress intended the words "force or violence or threat of force or violence, or by any other form of intimidation" to be no more than an enumeration of synonyms. The legislative history of the provision provides only limited illumination, but to the extent that it is pertinent it undermines the government's argument. As originally adopted in the 1961 amendments to the Federal Aviation Act of 1958 the definition of aircraft piracy meant only seizure or exercise of control "by force or violence or threat of force or violence." Pub.L. No. 87–197, 75 Stat. 466. Section 103 of the Antihijacking Act of 1974, Pub.L. No. 93–366, 88 Stat. 409, amended the definition by adding "or by

any other form of intimidation." The legislative history reflects that the amendment was considered by Congress to be an expansion of the definition, not a reiteration. Conf.Rep. No. 93–1194, 93d Cong. 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News, 3975, 3996, 3997.

We confront the specific question whether evidence of a threat of force or violence or of intimidation is sufficient to prove the element of force under the air piracy statute. Neither side cites any federal appellate case arising under this particular statute. We must therefore examine applicable general principles and in doing so we take note of a parallel line of authority arising under a similar statute.

■ The federal bank robbery statute proscribes a taking "by force and violence or by intimidation...." 18 U.S.C. § 2113(a). The fifth circuit has described these as *alternative* ways in which the offense may be committed. *United States v. Jacquillon*, 469 F.2d 380, 386 (5th Cir. 1972), *cert. denied*, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973).[1] The same conclusion seems consistent with the legislative history of 49 U.S.C. § 1472(i)(2). We therefore conclude that the government's evidence did not prove that Figueroa used force or violence in the attempted hijack.

### Constructive Amendment of the Indictment

It might be argued that the government's proof of threats and intimidation rather than force or violence is merely a variance between the indictment and the proof, i.e., that the indictment charged that Figueroa violated the air piracy statute in two of the five ways in which it could be violated, and

---

**1.** In *Jacquillon* the court observed that even though the statute is worded in the disjunctive, the indictment could be worded in the conjunctive and that proof of either element would support a conviction. *Accord, United States v. Haynes*, 610 F.2d 309, 310 (5th Cir. 1980). So here the indictment could have charged Figueroa with piracy by force and violence and threat of force or violence and by intimidation. In that event proof of any one of the elements charged would have supported conviction. Inexplicably, however, Figueroa was charged only with piracy by force and violence. *See also United States v. Bizzard*, 615 F.2d 1080, 1081 (5th Cir. 1980).

the government proved the other three. If this case involves no more than a variance, Figueroa would not be entitled to a reversal of his conviction unless he could prove that the variance substantially prejudiced his rights. *See, e.g., Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935); *United States v. Gonzales*, 661 F.2d 488, 492–93 (5th Cir. 1981).

■ Although the matter is not without controversy, we conclude that Figueroa's conviction constitutes a constructive amendment of the indictment rather than a simple variance between the indictment and the proof. Figueroa therefore suffered per se prejudice to his right to be tried only on charges in the grand jury indictment. U.S. Const., Amend. V; *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960).

In *United States v. Salinas*, 654 F.2d 319 (5th Cir. 1981), the court adopted the test of the District of Columbia Circuit to distinguish between constructive amendment and variance:

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

*Id.* at 324 (quoting *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C.Cir.1969)) (emphasis in original).[2]

If we allow Figueroa's conviction to stand, we would in effect permit the government to substitute the term "threats and intimidation," which the government proved but the grand jury did not charge, for the term "force and violence," which the grand jury charged but which the government could not prove. This is precisely the alteration of the charging terms of the indictment that *Salinas* proscribes.

The decision in *United States v. Bizzard*, 615 F.2d 1080 (5th Cir. 1980), applied the test for constructive amendment to facts similar to those found here. In *Bizzard*, the defendant was charged with violating 18 U.S.C. § 2113(d). The statute could be violated by putting life in jeopardy or by assaulting any person while robbing a bank. The indictment charged that the defendant placed the lives of two bank tellers in jeopardy. At trial, however, the government introduced evidence of assault and the trial judge instructed the jury on assault. The defendant's conviction on the charged offense was overturned because "[a] defendant has a substantial right to be tried solely on charges presented in an indictment returned by the grand jury."[3] *Id.* at 1082.

**2.** A simple variance occurs when, for example, the indictment indicates that the crime took place on Monday but the government's evidence at trial shows that it took place on Wednesday. *See, e.g., United States v. Phillips*, 625 F.2d 543, 545–46 (5th Cir. 1980). A constructive amendment occurs when, for example, the indictment charges that a bank president violated the law by lending money to a third party for his own use and the government proves that he violated the law by making loans to a third party with insufficient collateral. *See, e.g., United States v. Carlson*, 616 F.2d 446, 447 (9th Cir. 1980). The function of the distinction is this: we can be sure that a grand jury would indict the defendant in *Phillips* for the charged offense irrespective of whether it occurred on Monday, as alleged, or Wednesday, as proved. We cannot say with equal certainty that a grand jury would have indicted the bank president in *Carlson* for the crime that the government ultimately proved. *See United States v. Beard*, 436 F.2d 1084, 1087 (5th Cir. 1971).

**3.** There is dictum in our decision in *United States v. Guthartz*, 573 F.2d 225 (5th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978), which appears to be contrary to the reasoning in *Bizzard*. The holding in *Guthartz*, however, is not inconsistent with the holding in *Bizzard* or with the result that we reach here. The defendant in *Guthartz*, a landlord, sent a letter to the Department of Housing and Urban Development seeking to justify rent increases for his federally subsidized apartments. The letter referred to several enclosed documents prepared by a third party which exaggerated the cost of various improvements. The statute

The same result is warranted here.[4]

### Lesser Included Offense

Our decision to overturn Figueroa's conviction on the charged offense does not end the matter. Figueroa concedes that the evidence was sufficient to prove the lesser included offense of interference with flight crew members or flight attendants in violation of 49 U.S.C. § 1472(j), and that conviction of the greater offense necessarily included conviction of the lesser offense. *See generally United States v. Busic*, 592 F.2d 13, 23 (2d Cir. 1978).

Under 28 U.S.C. § 2106, this court has jurisdiction to remand and direct entry of such appropriate judgment as may be just under the circumstances. This section authorizes federal courts to modify a judgment in a criminal case by reducing the conviction to that of the lesser included offense. *See United States v. Swiderski*, 548 F.2d 445, 452 (2d Cir. 1977); *United States v. Industrial Laboratories Co.*, 456 F.2d 908, 911 (10th Cir. 1972) and cases cited therein. We conclude that the just disposition of this case is that Figueroa's conviction be reversed and the case remanded with directions to enter a judgment of conviction of the lesser included offense and for resentencing. It is so ordered.

which the defendant was accused of violating, 18 U.S.C. § 1001, prohibited *inter alia* the making of a false statement and the use of false documents. The indictment charged the defendant with making a false statement by means of a letter. At trial, the government proved that the enclosures included with the letter contained false estimates. According to the defendant, the government thereby constructively amended the indictment to charge him with using false documents rather than making false statements. Our court held, however, that the jury could have concluded that the enclosures were "an integral part" of the written statement that was "made" by the defendant rather than separate false documents that were "used" by the defendant. The court, therefore, rejected the defendant's argument that a substantial variance, much less a constructive amendment, had taken place. *See also United States v. Malatesta*, 583 F.2d 748, 755–56 & n.6 (5th Cir. 1978), *modified*, 590 F.2d 1379 (5th Cir.) (en banc), *cert. denied*, 440 U.S.

REVERSED AND REMANDED WITH DIRECTIONS.

962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979) (discussing *Guthartz*).

4. This would be a different case if the government had provided substantial evidence of the charged offense, force and violence, as well as evidence of threats and intimidation. In such a case, the judge's instructions to the jury could have focused the deliberations upon evidence of the charged offense, and there would be little likelihood that the jury would convict the defendant on charges other than those made by the grand jury. *See United States v. Gonzales*, 661 F.2d 488, 492 (5th Cir. 1981). In this case, however, the government furnished *no* substantial evidence of the charged offense of force and violence. The instructions of the trial judge, therefore, could not serve to focus the jury's attention upon evidence of the charged offense and thus avoid violation of the defendant's fifth amendment right to be tried only on charges in the grand jury indictment.