**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rafael CASTANEDA–REYES,**
**Defendant-Appellant.**

**No. 81–6197**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

April 21, 1983.

Michael G. Smith, Fort Lauderdale, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Barry Siegel, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, FAY and CLARK, Circuit Judges.

PER CURIAM:

Appellant was convicted of attempted air piracy under 49 U.S.C. § 1472(i)(1). The issues presented include whether the evidence was sufficient to establish appellant's sanity at the time of the offense, the propriety of a question put to a psychiatrist expert witness regarding appellant's ability to consult with counsel, the admissibility of a foreign document and the denial of a requested instruction on specific intent. Finding no merit in these contentions, we affirm.

On October 25, 1980, appellant was one of 125 passengers aboard a commercial flight leaving Miami on route to San Antonio. A few minutes after takeoff, appellant approached one of the flight attendants, holding a decal with a Cuban flag on it. Appellant also held a rolled-up newspaper; he told the flight attendant, "We are going to Cuba." Appellant threatened to set the plane on fire and told the flight attendant, "[W]e are all going to die." Appellant also indicated that if his demand to be taken to Cuba was not met, his brother, whom appellant indicated was aboard and had a gun, would start shooting people at random. Appellant's plan was foiled, though, when he was subdued by flight personnel. Once he had been restrained, the appellant began hitting his head against the bulkhead several times and stating that he was crazy.

After he was indicted, appellant underwent psychiatric evaluation because he asserted a defense of not guilty by reason of insanity. During the course of one of the evaluations, appellant indicated he had, about one week prior to the flight, gone to the Catholic Service Agency to see about getting the airline ticket. The plane ticket was issued two days before the flight. Appellant's boarding pass indicated he was assigned a window seat; however, he had seated himself in the aisle seat until the passenger assigned there claimed it, causing appellant to move over to his assigned seat.

Appellant presented two expert witnesses to support his contention that he was legally insane on October 25, 1980. These witnesses, a psychiatrist and a psychologist, outlined their examinations and testing procedures, the history obtained and gave expert opinions supportive of appellant's defense. Appellant's sister also testified in corroboration of his prolonged psychiatric difficulties.

The government responded with three expert witnesses, a psychiatrist, psychologist and neurologist, who uniformly refuted appellant's claim of insanity. Full direct and cross-examination was conducted by counsel.

### Sufficiency of Evidence

Appellant first contends that the evidence was insufficient for the jury to conclude beyond a reasonable doubt that he was legally sane at the time of the offense.

The standard for legal insanity is as follows:

(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

(2) As used in this Article [of the Model Penal Code], the terms "mental disease or defect" do not include an abnormality

manifested only by repeated criminal or otherwise antisocial conduct.

*Blake v. United States,* 407 F.2d 908, 916 (5th Cir.1969). As in the case of *United States v. Figueroa,* 666 F.2d 1375 (11th Cir. 1982), appellant's argument is based upon the believability of his expert witnesses versus the believability of the government's expert witnesses. Thus, "the issue was properly one for the jury's determination. It was free to accept or reject the testimony of either expert." *Id.* at 1377. Credibility choices lie within the province of the jury. *United States v. Kopituk,* 690 F.2d 1289, 1329 (11th Cir.1982). Viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences in its favor, *Glasser v. United States,* it is clear that "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 and n. 3 (5th Cir. 1982) (Unit B *en banc*). Correspondingly, it is also clear that a reasonable trier of fact could find that appellant was legally sane beyond a reasonable doubt at the time of the crime. *See United States v. Figueroa,* 666 F.2d at 1377. Despite appellant's contrary contention (Brief for Appellant at 26–27), "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Bell,* 678 F.2d at 549 and n. 3. The evidence is sufficient to uphold the jury's verdict.

### *Cross-Examination on Ability to Consult with Attorney*

■ Appellant next contends that he was denied a fair trial when the prosecutor, on his cross-examination of Dr. Cava, asked him the following question: "[n]ow, you indicated also did you not, the defendant is able in his mental condition to consult with his attorney—." At that point, appellant's counsel objected, and a sidebar was held. The basis for the objection was that any questioning regarding appellant's mental condition at the time of trial was irrelevant to the issue before the jury, whether he was legally insane at the time of the offense.

The government contends that the question related to a matter directly affecting the witness's credibility which was brought out on direct examination. Following the sidebar conference, the prosecutor withdrew the question and the court instructed the jury to disregard it, if they remembered it.

The government urges that admission of the evidence would not have been in error under 18 U.S.C. § 4244, as appellant argues, because that section only prohibits the *judge's findings* of mental competency from being introduced at trial. We need not address such, however, for appellant was not prejudiced in any way. The trial judge instructed the jury to disregard the question, if they could recall it, and the trial proceeded. If any error was present, it was certainly harmless. *See* Fed.R.Crim.P. 52(a).

### *Admissibility of Foreign Document*

Appellant sought to introduce into evidence a certified document from the Cuban Ministry of Public Health, which purportedly showed appellant's stay as a patient in a psychiatric hospital and a diagnosis that he had experienced hallucinations. (R.3, 321; D.Exh. 3). Appellant now claims the district court's exclusion of the document was error. We disagree.

■ The court sustained the government's objection to the document's admission on the grounds that it was not properly authenticated and that it appeared to have been tampered with. (R.3, 321–34). Appellant argues that under Fed.R.Evid. 803(4), (8), and 804(b)(5), the document was self-authenticating and admissible as an exception to the hearsay rule. (Brief for Appellant at 32). At trial, however, appellant specifically disclaimed reliance upon Rule 804. (R.3, 325). Rather, appellant sought admission under either Rule 803 or Rule 902. (R.3, 326, 330). Regardless of which rule appellant wants to employ, a look at the document discloses that the district court was correct in concluding that the document appeared to have been subjected to tampering, specifically that the date had been al-

tered. Because the document does not demonstrate a sufficient guarantee of trustworthiness, *see* Rule 803(24), Rule 804(b)(5), exclusion of the document was proper.

### Requested Instruction

Lastly, appellant contends that the district court erred because it failed to instruct the jury that attempted air piracy is a specific intent crime. The statute under which appellant was prosecuted, 49 U.S.C. § 1472(i)(1), reads as follows in pertinent part: "[w]hoever commits or attempts to commit aircraft piracy, as herein defined . . . ." In subsection (i)(2), "the term 'aircraft piracy' means any seizure or exercise of control, by force or violence or threat of force or violence or by any other form of intimidation, and with wrongful intent, of an aircraft within the special aircraft jurisdiction of the United States."

Two circuits have specifically held that the offense of aircraft piracy is a general intent crime and, thus, a defense of diminished mental capacity, short of a claim of insanity, as appellant wished to present to his jury, is inappropriate. *See United States v. Busic,* 592 F.2d 13, 21 (2d Cir. 1978); *United States v. Bohle,* 445 F.2d 54, 60 (7th Cir.1971). Section 1472(i) clearly proscribes attempted air piracy as a substantive offense in itself, separately punishable from a completed act of air piracy. *See United States v. Anderson,* 651 F.2d 375, 378–79 (5th Cir.1981) (discussing 21 U.S.C. § 963). As stated by the Seventh Circuit in *Bohle,* 445 F.2d at page 60:

> We are not persuaded by defendant's pedantic reasoning that Congress intended to make the hijacking of an aircraft a crime only if the hijacker intended to deprive permanently the owner of it. We agree with the Government and the district court that the wrongful intent referred to in the statute is no more than the general criminal intent present when one seizes or exercises control of an aircraft without having any legal right to do so.

The Second Circuit analysis in *Busic* follows the same reasoning at page 21:

The offense of aircraft piracy, however, requires a showing of general criminal intent. But the need to prove a "special" intent arises only by operation of law when something more is required. Here no such additional requirement was created by Congress' insertion of the "wrongful intent" language into the statute. These words merely connote the general mental culpability required for the commission of any serious crime.

The only intent which § 1472(i) requires for conviction is "wrongful intent." As both the Second and Seventh Circuits noted in their respective decisions, this "wrongful intent" is only a general intent.

Although the record presented to us does not contain the court's instructions, the colloquy during the charge conference clearly reflects that defense counsel was satisfied with the proposed instructions on general criminal intent. (R. 540) We assume from the discussion held that standard acceptable language was used in covering all essential areas. We hold such to be adequate under the statute involved.

AFFIRMED.