[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15002

_____

D.C. Docket No. 0:16-cr-60172-KAM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LEON L. ROBERTS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 30, 2019)

Before WILSON, JILL PRYOR and THAPAR,* Circuit Judges.

PER CURIAM:

_____

* The Honorable Amul R. Thapar, United States Circuit Judge for the Sixth Circuit,
sitting by designation.

Leon Roberts was convicted and sentenced for sex trafficking of a minor, in violation of 18 U.S.C. § 1591.  On appeal, Roberts's primary argument is that the district court committed *per se* reversible error by constructively amending the indictment at trial.  The government concedes the error.  Although a reversal predicated on a constructive amendment normally does not bar the retrial of a defendant, Roberts asserts that he cannot be retried because at trial the government failed to introduce sufficient evidence of his *mens rea*.  After a thorough review of the record, and with the benefit of oral argument, we agree with Roberts that the district court's instructions constructively amended the indictment.  Because there was sufficient evidence of *mens rea* at the initial trial, Roberts may be retried for the offense.  We thus vacate Roberts's conviction and sentence and remand the case to the district court for a new trial.

## I.    BACKGROUND

Roberts was indicted for sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(2) and 2.  The indictment charged Roberts with committing the crime while "knowing, and in reckless disregard of the fact, that S.A. had not attained the age of 18 years."  Doc. 7 at 1.  He pled not guilty.

2

## A.    The Evidence

At trial, the government presented evidence that Roberts prostituted S.A., a 14 year-old runaway, from May to June 2016.[1]  Roberts found clients for S.A. by posting advertisements on Backpage.com.  Roberts set the prices for S.A's services and kept the proceeds; in exchange, he let S.A. live in his hotel room.  Roberts forced S.A. to see clients "morning, afternoon, and night," making her stay awake all night to work.  Doc. 178 at 55.[2]  S.A. saw 5 to 10 clients each day, even when she was in pain or on her period.  Roberts once flipped S.A.'s mattress while she was sleeping, causing her to hit her head; another time, she saw him with a gun, which scared her.  Roberts had no other income during this time.

Although S.A. told Roberts that she was 18, her actions and appearance betrayed her true age.  Caroline Anderson, who dated Roberts and worked for him as a prostitute, testified that she "didn't believe [that S.A. was 18] the moment she said it."  Doc. 179 at 138.   Anderson explained that her "gut[]" and "mind" told her that S.A. was "a minor."  Doc. 179 at 125.  Some of her interactions with S.A. had made Anderson suspicious that S.A. was not as old as she claimed; for example, S.A. did not know how to use a tampon and did not know what orange

---

[1] We recite the facts viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in the government's favor. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).

[2] All citations in the form "Doc. #" refer to numbered entries on the district court docket.

juice was.  Anderson repeatedly warned Roberts that she believed S.A. was a minor.  After a fight with Roberts, Anderson threatened to "call the police if [S.A.] work[ed]" and report that she was underage.  Doc. 180 at 61.

Roberts's behavior indicated that he also knew, or at least suspected, that S.A. was a minor.  In the online advertisements he made for her, Roberts described S.A. as "young."  In text messages, he alluded to the possibility that "Child Net," a Florida social service provider that works with the Florida Department of Children and Families, might take S.A. away.

After another fight with Anderson, Roberts called the Fort Lauderdale Police Department.  He told an officer that "his ex-girlfriend [Anderson] was trying to encourage his little sister [S.A.] to sell her body for money."  Doc. 178 at 34.  Law enforcement responded to the Crossland Hotel, where Roberts and S.A. were living and where S.A. was working.

There, a police officer interviewed S.A. outside Roberts's presence.  S.A. explained that she was not Roberts's sister and that she was a minor.  Recognizing that S.A. may have been prostituted, the officer called in support from the Federal Bureau of Investigation's Crimes Against Children Task Force.  The FBI agent who responded noted that S.A. "appeared to be young."  Doc. 180 at 32.  He interviewed Roberts outside S.A.'s presence.  In that interview, Roberts accurately

4

told FBI agents that S.A. was "a 14-year-old girl" born in November 2001.  Doc. 180 at 18.

The police then arrested Roberts.  He later called Anderson from jail, referring to S.A. as "that little girl" in his phone calls.  Doc. 179 at 135.

At Roberts's trial, the parties submitted competing jury instructions about the *mens rea* element of the charged crime.  Roberts proposed an instruction stating that the government had to prove he knew of and recklessly disregarded S.A.'s minor status.  The government asserted that it could obtain a conviction if it proved that Roberts knew or recklessly disregarded S.A.'s minor status.  But the government submitted an instruction indicating that it could also obtain a conviction by proving in the alternative that Roberts had a reasonable opportunity to observe S.A.  Roberts argued that this proposed instruction was improper because the indictment alleged that he had acted either knowingly or in reckless disregard of S.A.'s minor status, not because he had had a reasonable opportunity to observe her.  Roberts contended that the government's instruction was improper because it would "allow the jury to essentially convict [him] on a basis that's not alleged in the indictment."  Doc. 181 at 6.  The district court adopted the government's proposed instruction over Roberts's objection.

The next day Roberts again objected to the instruction, arguing that giving it would amount to a constructive amendment.  The district court again overruled Roberts's objection and instructed the jury as follows:

> It is a federal crime for anyone, in or affecting commerce, to recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person, knowing or in reckless disregard of the fact that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.
>
> The defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
>
> (1)    [t]he defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means S.A.;
>
> (2)    [t]hat the defendant did so knowing or in reckless disregard of the fact that the person had not attained the age of 18 years and would be cause[d] to engage in a commercial sex act; and
>
> (3)    [t]hat the defendant's acts were in or affected interstate commerce. . . .
>
> If the government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe the person recruited, enticed, harbored, transported, provided, obtained, or maintained, then the government does not have to prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

Doc. 182 at 44-46.

After the government had rested its case, Roberts moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure Rule 29(a), arguing that the government had presented insufficient evidence to convict him under § 1591.

6

The district court denied the Rule 29(a) motion and submitted the case to the jury. The jury found Roberts guilty of sex trafficking of a minor, and the district court imposed a sentence of 292 months of imprisonment.

This is Roberts's appeal.

## II.    STANDARDS OF REVIEW

We review *de novo* whether a district court's jury instructions amounted to a constructive amendment of the indictment. *See United States v. Sanders*, 668 F.3d 1298, 1309 n.9 (11th Cir. 2012).

We review the district court's denial of a defendant's motion for judgment of acquittal *de novo*. *United States v. Chafin*, 808 F.3d 1263, 1268 (11th Cir. 2015). In reviewing the sufficiency of the evidence presented at trial, we decide whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in the government's favor. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).

## III.    ANALYSIS

Roberts argues on appeal that the district court's jury instructions constructively amended the indictment. He further contends that he cannot be retried for his crime because the evidence presented at trial was insufficient to convict him. We address each argument in turn.

**A.    The District Court Constructively Amended the Indictment.**

The Fifth Amendment protects a defendant's right to be tried only on the charges returned by the grand jury.  *See Stirone v. United States*, 361 U.S. 212 (1960).  Under the Fifth Amendment, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him."  *Id.* at 217.  A district court constructively amends an indictment if its jury instructions broaden the possible grounds for conviction beyond those alleged in the indictment.  *See id.* at 218-19; *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990).  A constructive amendment is *per se* reversible error.  *United States v. Figueroa*, 666 F.2d 1375, 1379 (11th Cir. 1982).

On appeal, Roberts argues that a constructive amendment occurred because the trial court's instructions broadened the possible grounds for conviction beyond what was charged in the indictment.  The government concedes error.

We readily conclude that the district court constructively amended the indictment.  The indictment alleged that Roberts sex trafficked a minor, S.A., "knowing, and in reckless disregard of the fact, that S.A. had not attained the age of 18 years," in violation of 18 U.S.C.  §§ 1591(a)(1), (b)(2), and 2.  Doc. 7 at 1. The indictment contained no allegation that Roberts violated §1591(c) by having had a reasonable opportunity to observe his minor victim.  *See* 18 U.S.C. §  1591(c).  Yet, in its jury instructions, the district court explained that"[i]f the

8

government prove[d] beyond a reasonable doubt that [Roberts] had a reasonable opportunity to observe" S.A., then the government did "not have to prove that [Roberts] knew, or recklessly disregarded the fact, that [S.A.] had not attained the age of 18 years." Doc. 182 at 46.   Because a constructive amendment is *per se* reversible error, *Figueroa*, 666 F.2d at 1379, Roberts's conviction for sex trafficking of a minor must be reversed.

**B.      The Government Presented Sufficient Evidence to Convict Roberts.**

Roberts contends that the Double Jeopardy Clause of the Fifth Amendment bars his retrial.  It is well established that if a conviction is set aside based on error in the trial process, the Double Jeopardy Clause does not preclude the government from retrying the defendant.  *See Burks v. United States*, 437 U.S. 1, 15-16 (1978). Roberts nonetheless asserts that he cannot be retried because at trial the government failed to introduce sufficient evidence of his *mens rea*.  If the government indeed failed to offer sufficient evidence, double jeopardy principles would bar the government from retrying Roberts.  *See id.*  But, upon review of the record, we conclude that the government presented sufficient evidence to convict Roberts of sex trafficking of a minor in violation of 18 U.S.C. § 1591.

To convict Roberts under § 1591, the government had to prove that he:  (1) knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained his victim by any means; (2) knew, or recklessly disregarded the fact,

9

that his victim was a minor and would be caused to engage in a commercial sex act; and (3) acted in or affecting interstate or foreign commerce. *See* 18 U.S.C. § 1591(a); *see also United States v. Mozie*, 752 F.3d 1271, 1286 (11th Cir. 2014). Roberts challenges only the second prong on appeal, contending that the government presented insufficient evidence from which the jury reasonably could conclude that he (1) knew S.A. was a minor, or (2) acted with reckless disregard of the fact that S.A. was a minor.

We disagree. The government presented sufficient evidence from which the jury could find one, if not both, of those alternatives.[3] The government's best evidence of Roberts's knowledge of S.A.'s minor status was that at the time of his arrest, Roberts accurately told FBI agents that S.A. was "a 14-year-old girl." Doc. 180 at 18. Roberts also accurately reported S.A.'s birth month and year—November 2001—to the FBI agents. From this evidence, a reasonable jury could infer Roberts's knowledge of S.A.'s age.

---

[3] The government contends that it also presented sufficient evidence from which a reasonable jury could find Roberts guilty under the jury instruction at issue, that he had a reasonable opportunity to observe his minor victim. *See* 18 U.S.C. § 1591(c). Roberts responds that we may look only to whether the government presented sufficient evidence to prove the two types of *mens rea* charged in the indictment: knowledge and reckless disregard. Because the government presented sufficient evidence to establish that Roberts acted with knowledge or reckless disregard of his minor victim's age, however, we need not reach the issue of whether, in conducting a sufficiency analysis after a constructive amendment, we may consider instead whether the government presented sufficient evidence to support the verdict the court rendered under the constructive amendment.

Roberts argues that these statements made at the time of his arrest do not establish that he knew S.A.'s age at the time of the offense. But a jury could infer from these statements he knew of S.A.'s age at the time that he engaged in the offense. On the day of his arrest when Roberts told law enforcement S.A's correct age, S.A. was still living in his hotel room and engaging in prostitution. Given the temporal overlap between Roberts's trafficking activities and the time of his statement about S.A.'s age, a reasonable jury certainly could find that he knew her age at the time of the offense.

In addition, plenty of other evidence supports an inference that Roberts knew of or recklessly disregarded S.A.'s age. The jury heard recorded phone calls from jail in which Roberts referred to S.A. as "that little girl." Doc. 179 at 135. The jury examined Roberts's text messages, sent during the offense period, in which he referred to the possibility of "Child Net" taking S.A. away. The jury learned that Roberts had posted online advertisements in which he described S.A. as "young." And Anderson described how she warned Roberts more than once that she believed S.A. was underage. In addition, Anderson testified that S.A. seemed young because she did not know how to use a tampon and did not know what orange juice was, and the FBI agent testified that S.A. "appeared to be young" based on her physical appearance. Doc. 180 at 32. From this combination of evidence, a reasonable jury could conclude that Roberts knew, or at least

11

recklessly disregarded, that S.A. was not 18 years old, as she initially had claimed to be.

Some evidence supported Roberts's contentions that he did not know, or did not recklessly disregard, S.A.'s minor status. For example, S.A. testified that she told Roberts she was 18 years old. In addition, a Fort Lauderdale police officer tasked with investigating whether S.A. was a minor engaging in prostitution testified that he believed S.A. was 18 years old after meeting and speaking to her. But we do not infer that the evidence was insufficient to support the jury's verdict from the fact that some evidence was contrary to that verdict. *See, e.g.*, *United States v. Brown*, 415 F.3d 1257, 1271 (11th Cir. 2005).

Viewing the evidence in the light most favorable to the government, a reasonable jury could find that the evidence established Roberts's guilt beyond a reasonable doubt under the original, rather than the constructively amended, indictment. Thus, double jeopardy does not bar Roberts's retrial on remand. *See Burks*, 437 U.S. at 15-16.[4]

## IV.   CONCLUSION

For these reasons, we vacate Roberts's conviction and sentence. We remand to the district court for further proceedings consistent with this opinion.

---

[4] Roberts also argues that the district court erred in applying a sentencing enhancement. Because we vacate Roberts's conviction and sentence, that issue is moot.

12

**VACATED AND REMANDED.**