[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14793

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 25, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00285-CR-T-17-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES M. HAIR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 25, 2006)**

Before EDMONDSON, Chief Judge, ANDERSON and FAY, Circuit Judges.

PER CURIAM:

In September 2004, Charles Hair was convicted in the Middle District of

Florida of three counts of attempting to transport and transporting child

pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1), and

one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B).  Each of the counts involved images he allegedly sent, or caused to be sent, or received over the internet using his computer.  He was sentenced to 365 months in prison.  The district court also announced an alternative sentence of 660 months to be applied if the Federal Sentencing Guidelines were declared unconstitutional.[1]  Hair is currently 49 years old.

Hair appeals his conviction and his sentence on eight grounds, alleging the following errors in the district court: (1) an improper denial of a motion for judgment of acquittal, (2) an improper aiding and abetting instruction at trial, (3) the government's failure to prove key elements of the crimes charged, specifically that Hair's conduct bore a substantial relationship to interstate commerce, (4) the cumulative effect of evidentiary errors at trial, (5) an improper five-level enhancement of Hair's guidelines sentence, (6) Confrontation Clause and Due Process Clause violations stemming from hearsay testimony during sentencing of Hair's past sexual abuse of others, (7) Fifth and Sixth Amendment violations because of an alleged requirement that sentences be no higher than what is

---

[1]    The district court announced Hair's sentence after the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004), which initially called the constitutionality of the Federal Sentencing Guidelines into question, but before the Court ruled that their mandatory application was unconstitutional in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

2

provided for in the guidelines, and (8) the unreasonableness of the "alternative sentence."

After consideration of each of the arguments, we affirm Hair's conviction but vacate the sentence and remand the case to the district court for a resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 17th, 2003, an undercover United States Postal Inspector named Paul Soboyu, using the screen name "thadude2003," placed an advertisement on Yahoo, an internet website, in a member section called "Gay Boys in Briefs." The advertisement offered "underground h/c movies of young boys." Later that day, an individual using the screen name "Chuck Albright" with a corresponding email address of bttmboy2f@yahoo.com, responded to the ad asking, "what do you have in young [sic]." Soboyu responded with graphic details of two films he claimed to have, and eventually Soboyu agreed to send "Chuck Albright" the two films in exchange for $20 in cash and approximately 200 photographs Albright promised to send to "thadude."

On March 3rd, 2003, Bttmboy sent Inspector Soboyu an email with three "JPEG" images of child pornography.[2] The next exchange between the two was on

_____

[2] A "JPEG" image is a packet of compressed data sent over the internet that, when opened, displays an image or picture. JPEGs are usually photographs, and are created when the

3

March 17th, when Bttmboy sent an email to Soboyu stating that payment for the videos was on its way, and that he would begin sending pictures under the email address J756389@yahoo.com. Later on the 17th, someone on the J756389 email address sent Inspector Soboyu an email with "links" to a Yahoo "briefcase" containing child pornography.[3] On March 19th and April 4th of the same year, similar emails were sent from that address to Soboyu containing images of child pornography.

Soon after receiving the April 4th email, Soboyu emailed back to the J756389 address and said that he had not received any payment in the mail. J756389 responded that he was "laid up again in hospital," but that he had sent out a greeting card with cash in it, and that his name was "Mike Head." This was the first time that the person with whom Soboyu was exchanging emails had used a name to identify himself. Soboyu later received a greeting card in the mail, postmarked from Tampa, Florida. Inside the card he found $20 in cash, and written

---

user "compresses" the photo into a JPEG file. The user can then send that file over a network (or the internet) to another person, who can open the file and view the picture in its original form. See United States v. Harding, 273 F.Supp.2d 411, 423-424 (S.D.N.Y. 2003).

[3] A "link" is something in a document like an email, usually highlighted or underlined, that sends users who click on it directly to a new location—usually an internet address or a program of some sort. A "briefcase" is an imaginary, private "hard drive" on the internet where an account holder can store images. It is like a bus station locker in cyberspace. By sending someone a "link" to your "briefcase," you allow that person obtain access to the files in that briefcase. The briefcase and its contents are actually "located" on an internet server, which is controlled by the owner/operator of the website. In this case, Yahoo owned the server on which the briefcase was located.

on the inside of the card was the following: "Mike Head, 8412 North 40th Street, Tampa, Florida 33604." Via email, Soboyu confirmed that the person he was dealing with wanted the pornographic videos sent to the 40th Street address in Tampa.

Soboyu handed the case off to Inspectors Thomas Kochman and Linda Walker. Kochman assumed the "thadude2003" identity and assured the contact that the movies would be sent out very soon. Meanwhile, Inspector Walker issued subpoenas to Yahoo and received information back about the Bttmboy and J756389 email accounts. The Yahoo records had the name "Mike Davis" of Tampa linked to the J756389 email, and Chuck Albright of Tampa tied to the Bttmboy email.

The Yahoo subpoenas also produced "IP addresses" for both the Bttmboy and J756389 accounts.[4] Because those accounts were accessed through an internet website, the dates and times when those addresses were used was marked by an IP address. Inspector Walker was able to determine that on May 9th, 2003, Bttmboy had signed onto the internet through Earthlink, an ISP (internet service provider). Walker then contacted Earthlink for information regarding the IP address assigned

---

[4]    IP addresses are numbers that are automatically assigned when a persons signs onto the internet via an "ISP" (Internet Service Provider). Thus when a person uses an internet service provider to access the internet, that person is assigned an IP address unique to the "session" in which he is signed on to the internet.

to the Bttmboy account when it was signed on to the internet on May 9th.  Earthlink data showed that on May 9th, Bttmboy had accessed the internet through an Earthlink account registered to Charles Hair at 8412 North 40th Street, Tampa, Florida.  This was the first time the government linked Charles Hair with the investigation of child pornography distribution.

On May 28th, 2003, law enforcement agents executed a search warrant on the 8412 North 40th Street address, which was Hair's personal business, "Rainbow Incense."  The government claims that during the search, Hair waived his rights and initially denied having anything to do with child pornography.  Agents then showed Hair two documents found inside his store: a printout of an email welcoming J756389 as a member of two Yahoo groups ("teenboyspicsnvids" and "webcamgames") and a printout of an email address book for the email account J756389.  Some of the addresses in the address book included ""best_little_boy_pics," "boys2boysmasturbationzone," "boyluvr2003," and "coachdad4yngr."  The government claims Hair then admitted he used both email addresses to place the order for the movies and that he traded and collected images of child pornography.  According to the agents, Hair said he had been curious about the movies and that he had placed the order for the movies for a former employee, Mike Head.  Hair also admitted that he had emailed Inspector Soboyu

the links that had given Soboyu access to the child pornography in Hair's "briefcase."

Hair's computer was seized. An investigation of the computer revealed that both the Bttmboy and J756389 email accounts had been accessed with the computer, and that dozens of images of child pornography were stored in the "temporary internet folder."[5] With Hair's permission, agents then took over the two emails accounts in question, and found a briefcase for J756389 containing the same pornographic pictures for which Hair had sent the links to Inspector Soboyu. Some of the images in the J756389 briefcase were also found in the temporary internet folder on Hair's hard drive.

Agents discovered a list of Yahoo groups of which J756389 was a member: "AmericanGayBoysVideoClipandMoviesUSA," "cleanyoungbiyspix," "gayteenboypete," "swimboystwo," and "very_cute_boys." Agents also discovered emails between Hair and fellow group members in which Hair offered to trade child pornography, and 3 groups which automatically sent images of child pornography to the J756389 address on a regular basis.

---

[5] A "temporary internet folder" stores information gathered and viewed on recently visited websites. The folder is technically "on" the hard drive of the computer, but its data is not permanently stored there. The temporary internet folder is where recently viewed information is kept temporarily. See United States v. Grimes, 244 F.3d 275, 279 (5th Cir. 2001).

Hair first moved to suppress the confession and the search of Rainbow Incense based on the search warrant. The defense claimed the search was based on Agent Walker's allegedly faulty assertion in the warrant application that "Yahoo and Earthlink were subpoenaed for information concerning the email address bttmboy2f@yahoo.com. Records received on May 22, 2003 indicated the Charles Hair is the subscriber." The defense claimed and still insists in the appeal that the Yahoo and Earthlink records do not directly tie Hair to the email accounts, and that the statement in the warrant application was not a fact, but an inference or conclusion drawn by the government. The court denied the motion to suppress.[6]

Prior to trial, the defense filed a motion notifying the court of its intent to present a defense that Mike Head, a former employee of Hair's, actually committed the crimes charged. The district court reserved ruling on the motion. The defense also sought to bar the government from displaying images of child pornography to the jury via a projection screen. The court reserved ruling on this motion in limine but eventually overruled the objection.

At trial, the defense sought to cross-examine Agent Walker about any investigation she may have conducted about Mike Head. The government objected, and after a sidebar conference, the court ruled that the defense could not

---

[6] Hair does not contest the denial of the motion to suppress in this appeal.

8

cross-examine the agent on the Mike Head investigation, but that the defense could call the agent as an adverse witness and examine her about Mike Head after laying a foundation.

During the charge conference, Hair objected to the government's request that the court instruct the jury on the theory that Hair had aided and abetted another party–Yahoo–in the transmission of images of child pornography. The government argued that by sending the briefcase link to Inspector Soboyu, Hair had effectively assisted Yahoo in transporting child pornography. Hair insisted that the evidence did not support the proposed instruction and that any such instruction would constitute an impermissible constructive amendment of the indictment. The district court overruled the objection and included the aiding and abetting instruction in the jury charge.

Before the jury was given the case, Hair moved for a judgment of acquittal, arguing that the evidence had not shown that he had transported "images of child pornography through interstate commerce," only that he sent the agents a "link" to those images. The judge denied the motion, and the jury convicted Hair on all four counts. His motion for a new trial was denied, and Hair proceeded to sentencing.

Hair's original sentencing guideline range was enhanced from a base level of 17 to a base level of 38. Hair objected to each of the enhancements under Blakely

v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004) and the Fifth and Sixth Amendments.  He argued that the facts supporting those enhancements were neither charged in the indictment (except for using a computer in his crime), nor reflected in the jury's verdict.  The district court overruled the Blakely objection. Hair faced 292 to 365 months in prison, and the district court imposed the maximum sentence allowed by the guidelines saying, in the alternative, that if the guidelines were found to be unconstitutional, Hair would face a sentence of 660 months in prison.  This appeal followed.

## II. DISCUSSION

A. The Denial of the Motion for Judgment of Acquittal.

After the parties had presented their cases but before the jury was charged, Hair made a motion for judgment of acquittal on Counts One through Three.  The district court denied the motion, and Hair appeals.  The denial of a Rule 29 motion for judgment of acquittal is reviewed de novo.  United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 2004). To prove a defendant is guilty of a violation of 18 U.S.C. §2252A(a)(1), the government must show that the defendant knowingly transported or shipped child pornography in interstate commerce by any means, including by a computer.  In this case, the defense claims that because the emails

10

Hair sent to Inspectors Soboyu and other federal agents contained only links that, when used, would permit the user to retrieve pornographic images from a Yahoo briefcase not located on Hair's computer, there was no evidence that Hair transported visual depictions of child pornography.

18 U.S.C. § 2 of the federal code, the aiding and abetting statute, "allows a jury to find one guilty of an offense even though he did not commit all the acts constituting the elements of the substantive crime aided." United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984). That provision of the federal code is designed for cases where a "defendant with the requisite intent to commit a crime gets someone else to act in a way necessary to bring about the crime, even if that other person is innocent . . . [in these cases] the defendant supplies the intent and maybe another element or two while getting someone else to supply at least one additional element that is necessary to the commission of the crime." United States v. Hornady, 392 F.3d 1306, 1313 (11th Cir. 2004).

We conclude that there was ample evidence that the defendant aided and abetted Yahoo in actually transferring the images of child pornography. The government provided evidence that the defendant had the intent to transmit images to the undercover agent, and by setting up and using the Yahoo server and the

11

"briefcase" function, Hair caused Yahoo—without the knowledge of the company—to violate §2252A(a)(1).

B. <u>The Aiding and Abetting Instruction.</u>

At trial, the government requested that the district court instruct the jury on the theory of aiding an abetting under 18 U.S.C. § 2(b) as it applied to the actual transmission of pornographic images in this case. The defense claims that the aiding and abetting instruction was not supported by the evidence and was an impermissible constructive amendment of the indictment.

The jury instructions explained the government theory that Hair "caused another person" to commit the offense. Specifically, the government had alleged that Hair caused Yahoo to send pornography over the internet. Hair argues that Yahoo was not a "person," that the instruction's reference to "another person" instead of "another person or entity was confusing, and that the evidence only supported the conclusion that Hair sent Inspector Soboyu access to the visual depictions of child pornography, but did not cause the company to automatically send any images. We readily conclude that the jury was not confused and would have recognized that Yahoo was the other "person." We also conclude that there was ample evidence that Hair caused Yahoo to send the pornography and thus that the instruction was supported by the evidence.

12

Hair next argues that the aiding and abetting charge constituted a constructive amendment of the indictment. An indictment is amended when the essential elements of the offense charged in the indictment are "altered to broaden the possible bases for conviction" beyond what the indictment says. United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990). Our case law has affirmatively concluded that aiding and abetting need not be charged in the indictment for a jury to convict a defendant based on that theory. Martin, 747 F.2d at 1407. Nor is there any indication that the "essential elements of the offense" contained in Hair's indictment were altered to broaden the bases for conviction. The essential elements remained the same, but an additional party (Yahoo) was used to support the government theory. We conclude there was no error in instructing the jury on the aiding and abetting theory.

C. The Substantial Relationship to Interstate Commerce.

Hair challenges his conviction on the possession count and argues that the government failed to establish the his conduct bore a substantial relationship to interstate commerce sufficient to warrant federal jurisdiction. This is a sufficiency of the evidence challenge that is made for the first time on appeal. Also for the first time on appeal, Hair argues that the jury instructions on this issue misstated the law to the detriment of his case. Arguments that the defendant failed to raise at the

13

district court level are reviewed for plain error. United States v. Moore, 253 F.3d 607, 609 (11th Cir. 2001). Under plan error review, an appellate court must not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three of those conditions are met, the court may exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).

In this case, there was evidence presented to the jury that Hair used his computer and the internet to transport and receive images of child pornography. These are clearly instrumentalities of interstate commerce. Hornady, 392 F.3d at 1311 ("The internet is an instrumentality of interstate commerce"). The evidence established that the images which were the subject of the possession count were saved on Hair's temporary internet folder on the hard drive of his computer. Thus, the pornographic images themselves had been received by Hair on his computer and had traveled in interstate commerce on an instrumentality of interstate commerce. We conclude that there is ample evidence of a substantial connection to interstate commerce.

For the same reasons, even if there were error in one part of the instruction, there clearly was no adverse effect on Hair's substantial rights.

D. The Defendant's Sentence.

After the jury returned guilty verdicts on all four counts, the district court imposed a sentence of 365 months. The sentence was composed of a concurrent sentence of 180 months on Counts One and Two, one 180-month sentence on Count Three to be served consecutively with Counts One and Two, and one 5-month sentence on Count Four to be served consecutively after the first 360 months.[7]

After Booker, we continue to review the district court's application of the Guidelines: "The district court's interpretation of the sentencing guidelines is subject to de novo review on appeal, while its factual findings must be accepted unless clearly erroneous." United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir. 2005) (quoting United States v. Pompey, 17 F.3d 351, 353 (11th Cir. 1994)). If the guidelines were properly calculated, then the court must review the sentence

---

[7]     The court went on to explain that in the event that the Federal Sentencing Guidelines were determined to be unconstitutional, it would impose a sentence that separated the 180-month sentences for Counts One and Two and have them served consecutively, and would change the sentence for possession of child pornography in Count Four from 5 months to 120 months.

imposed for unreasonableness. United States v. Booker, 543 U.S. at 260-64, 125 S.Ct. at 765-67 (2005).

The 365-month sentence was based in part on U.S.S.G. § 2G2.2(b)(5), which provides for a five-level enhancement of the defendant's offense level in cases where the government can demonstrate a "pattern of activity involving the sexual abuse or exploitation of a minor." Hair's primary challenge to his sentence focuses on this five-level enhancement. A review of the parties' briefs and the transcript of the sentencing hearing reveals that by the time it imposed the sentence, the district court was convinced that Hair had engaged in a pattern of sexual abuse of minors. What remains unclear is what evidence was actually used by the district court when it concluded that § 2G2.2(b)(5) should be applied in Hair's case.

During the guilt phase, the evidence pertaining to Hair's history of sexual abuse involved only (1) the facts and allegations relating to the current charges against Hair and (2) evidence of a 1972 state conviction for deviate sexual intercourse. The notes accompanying the Guidelines explicitly state that the phrase "sexual abuse or exploitation" does not include "possession, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." § 2G2.2 app. n.1. This means that the facts underlying the current charges against Hair cannot be considered when determining if § 2G2.2(b)(5) should be applied. The second piece

16

of evidence adduced at Hair's trial–the 1972 conviction–was from so long ago that the government was unable to learn any facts about the crime, including whether it even involved sexual exploitation of a minor.

After Hair's conviction, additional evidence of a history of sexual exploitation of minors was presented to the court. The pre-sentence report contained allegations that Hair abused minors in 1982, 1986, and 1989. This report, combined with the additional hearsay evidence submitted at sentencing, would have supported a finding of a pattern of sexual exploitation.

The problem here derives from the district court's statements at sentencing suggesting the court's apparent intention to rely solely on evidence presented at trial in determining the applicability of the sentencing enhancements.[8] After imposing the sentence, the court was asked by defense counsel to describe what evidence formed the basis for the § 2G2.2(b)(5) five-level enhancement. The court responded:

> [T]he Court heard enough testimony at the time of the trial to determine that there was a pattern of activity. The records themselves on the criminal

[8] The district judge apparently declined to consider the evidence which was adduced after trial (i.e. reflected in the pre-sentence report and in the hearsay testimony offered at sentencing) because the district court was concerned that Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004) might have barred consideration of the evidence. That concern has now been removed. In United States v. Baker, 432 F.3d 1189 (11th Cir. 2005), this court recently held that Crawford does not "affect our rule that the district court may base sentencing determinations on reliable hearsay." Id. at 1254 n.68.

17

history from 1972 which I found specifically is appropriate with regard to this man's record, establishes in and of itself a pattern of behavior from 1972 and the conviction itself today that we are sentencing upon, which we are sentencing, show a 31-year history of governmental awareness of his propensities, and what we do know not with regard to what went on in that 31 years we certainly can't sentence for, but to consider that he has not followed this pattern of behavior in the 31 years would be unrealistic.

That statement indicates that the district judge intended to consider *only* evidence of sexual exploitation of minors that was presented at trial. As indicated above, however, the evidence at trial (i.e. not including the additional evidence reflected in the pre-sentence report and the hearsay evidence adduced at sentencing) is insufficient to support the challenged five-level enhancement. Accordingly, the sentence is vacated and the case is remanded for resentencing.[9]

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Hair's conviction on all counts, but VACATE the sentence and REMAND to the district court for resentencing.[10]

---

[9] As indicated in note 8, Hair's Crawford challenge is foreclosed by Baker. Accordingly, on remand the district court will not be precluded by Crawford from considering reliable hearsay. Also in light of our vacation of sentence on another ground, we need address neither his United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005) challenge nor his challenge to the reasonableness of the sentence suggested by the district court as a possible alternative sentence.

[10] We reject Hair's other arguments on appeal without need for further discussion.