[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15145
_____

D.C. Docket No. 7:16-cr-00002-HL-TQL-5

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIAM BACON,
DONATUS O. MBANEFO,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

(April 13, 2020)

Before WILSON, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Both Defendant Dr. William Bacon and Defendant Dr. Donatus Mbanefo

were convicted by the jury of conspiracy to distribute controlled substances, in

violation of 21 U.S.C. § 846.  Only Dr. Mbanefo was also convicted of two

substantive counts of unlawful dispensation of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(2).  The superseding indictment alleged that eight individuals conspired to operate the Wellness Center of Valdosta (the "Valdosta clinic") and the Relief Institute of Columbus (the "Columbus clinic") as pill mills for the purpose of enriching themselves by unlawfully dispensing controlled substances.  Drs. Bacon and Mbafeno proceeded to trial while the other defendants pled guilty.   On appeal, both Defendants challenge the sufficiency of the evidence to support their convictions of conspiracy.[1]  Dr. Mbanefo argues that the district court constructively amended his substantive counts and that it erred in calculating his sentence.  Dr. Bacon challenges several evidentiary rulings.  We address each challenge in turn.

### I.  DR. BACON'S CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE TO SUPPORT HIS CONSPIRACY CONVICTION

With respect to Dr. Bacon's challenge to the sufficiency of the evidence to support his conviction, we have carefully reviewed the relevant parts of the record, as well as the briefs of the parties.  We conclude that there is ample evidence to support the jury's finding of guilt.  Although there is no need to mention all of the extensive evidence, the evidence of the medical professionals is significant.  Both

---

[1]      Dr. Mbanefo also challenges the sufficiency of the evidence to support his convictions on the two substantive counts, which we reject summarily.  Suffice it to say that there was ample evidence to support those convictions, including the testimony of the two expert medical professionals.

Dr. Gary Kaufman and Dr. Gene Kennedy were qualified as expert witnesses and testified that the six patient records of Dr. Bacon's patients reflected that Dr. Bacon's prescriptions were written without legitimate medical purpose and outside the usual course of professional practice. Their opinions were based in significant part on the large, and often escalating, amounts of Oxycodone, almost always in combination with Xanax[2] (which combination is risky), and frequently in combinations of two short-acting doses (e.g., both 30 mg. and 15 mg. of Oxycodone), which, although not prohibited, is not "medically sound." The two expert witnesses also opined that Dr. Bacon's medical histories were inadequate, and the records reflected no consideration of treatment alternative to the drugs prescribed. The expert doctors also opined that the patient files indicated that Dr. Bacon had overlooked numerous warning signs, including claims by patients to having been taking absurd amounts or combinations of medications; obviously forged MRIs; unreasonable patient representations of pain; and abnormal drug screens. Indeed, in his own testimony, Dr. Bacon corroborated the fact that pretty much all patients were prescribed Oxycodone with Xanax.

The foregoing strong evidence that Dr. Bacon's prescriptions were written without legitimate medical purpose is bolstered by substantial evidence that the

---

[2]    Xanax is a brand name for Alprazolam drugs.

Valdosta clinic at which Dr. Bacon worked was more like a "pill mill" than a legitimate doctor's office. There is strong evidence that Dr. Bacon was aware of several warning signs or "red flags," including knowledge that pharmacies often called complaining that his prescriptions were inappropriate and refusing to fill them.

## II. DR. MBANEFO'S CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE TO SUPPORT HIS CONSPIRACY CONVICTION

We also reject Dr. Mbanefo's challenge to the sufficiency of the evidence to support the jury's finding that he was guilty of conspiracy. Although Dr. Mbanefo's tenure at the Columbus clinic (where he worked) was only several months, the evidence of his guilt was stronger even than that supporting the conviction of Dr. Bacon. All of the evidence mentioned above with respect to Dr. Bacon—or equivalent evidence—was applicable also to Dr. Mbanefo. If anything, the eight prescription records (of Dr. Mbanefo) reviewed by the two expert witnesses were even more damning than those of Dr. Bacon. And the operation of the two clinics (with respect to the kind of drug prescriptions, the amounts and the combination thereof, and the conditions of the office and nature of the patients) was substantially the same. In short, there was ample evidence on the basis of which the jury could reasonably find Dr. Mbanefo guilty.

4

### III. DR MBANEFO'S CHALLENGE TO THE JURY INSTRUCTION
### AS A CONSTRUCTIVE AMENDMENT

With respect to Dr. Mbanefo's argument that the jury charge amounted to a constructive amendment of Counts Two and Three (his substantive counts of dispensing), we conclude that there has been no such constructive amendment.  Dr. Mbanefo argues that the indictment charged that he, aided and abetted by others known and unknown, including named co-defendants, did unlawfully dispense a controlled substance.  He argues there was a constructive amendment when the jury instruction did not require the jury to find that the named individuals actually did aid and abet him.  Our decision in United States v. Keller, 916 F.2d 628 (11th Cir. 1990), described the distinction between a constructive amendment and a variance:

> we believe the proper distinction between an amendment and a variance is that an amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.  A variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same.

Id. at 634.

The dispensing offense with which Dr. Mbanefo was charged in this case contains the following elements:  (1) the defendant must have dispensed the controlled substance; (2) for other than legitimate medical purposes in the usual course of professional practice; and (3) that he did so knowingly and intentionally.

5

No aider or abettor is required for proving the offense of dispensing. Accordingly, Dr. Mbanefo's argument is without merit.

Moreover, we note that Dr. Mbanefo raises this argument for the first time on appeal, and it therefore is subject to plain error analysis. Dr. Mbanefo could not establish any of the requirements for plain error. For example, Dr. Mbanefo was convicted of conspiring with the same persons named as aiders and abettors, and therefore obviously cannot prove that the challenged instruction to the jury adversely affected his substantial rights. There is no error, plain or otherwise.

## IV. DR. BACON'S CHALLENGE TO THE SUMMARY CHARTS

We also reject Dr. Bacon's challenge to the admission of the summary charts. The government satisfied all of the requirements of Federal Rule of Evidence 1006. We agree with the government that the instant charts include no "assumptions" which, under our decision in United States v. Richardson, 233 F.3d 1285, 1293–94 (11th Cir. 2000), would have to be supported by evidence in the record. Dr. Bacon argues only that there is an inference in the charts that all of his prescriptions were illegitimate.

We agree with the government that the charts do not indicate that all of Dr. Bacon's prescriptions were illegitimate. Rather, the charts purport only to be a true record of the number and type of each prescription. And this was brought home to the jury when counsel for Dr. Bacon asked William Reyes (who supervised the

6

preparation of the charts and testified) which of the prescriptions were legitimate and which were illegitimate. He answered that that was beyond his expertise, making it obvious to the jury that the charts did not purport to indicate legitimacy or illegitimacy. Moreover, even if that inference were deemed the kind of "assumption" requiring evidence, there was ample evidence that most of Dr. Bacon's prescriptions were comparable to the ones examined by the two expert doctors and opined by them to be without legitimate medical purpose and outside of the usual course of professional practice. In other words, there was ample evidence that most of Dr. Bacon's prescriptions were in fact illegitimate.

## V.  DR. BACON'S CHALLENGE TO THE TWO EXPERT WITNESSES

Dr. Bacon also argues that the district court erred in allowing Drs. Kaufman and Kennedy to testify as experts. We reject this argument as wholly without merit. Dr. Bacon argues, in conclusory fashion, that there was an insufficient demonstration that the methodology employed by the two doctors was reliable; in particular, he argues that there was a lack of detail as to how they applied the authoritative sources from which they said they derived the standards they applied. Dr. Bacon's argument is conclusory, failing to suggest the kind of detail he believes is lacking. The demonstration of reliability in this case is substantially similar to that approved by this court in United States v. Azmat, 805 F.3d 1018, 1041–43 (11th Cir. 2015), and readily passes muster in this case also.

## VI.  DR. BACON'S CHALLENGE TO THE COMMENTS MADE BY PHARMACIST ESKEW

Dr. Bacon also argues that the district court erred when it allowed pharmacist Bryan Eskew to testify on direct examination by the government that Dr. Bacon "knew what he was doing," and allowed him to testify on cross-examination by Dr. Bacon that "I think the doctor knew what was going on."  Dr. Bacon acknowledges that there was no contemporaneous objection, and therefore a plain error analysis applies. We readily conclude that there was no plain error.

We note initially that one of the two challenged statements by pharmacist Eskew was elicited by Dr. Bacon's own cross-examination.  Moreover, our decision in Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd., 320 F.3d 1213, 1221–23 (11th Cir. 2003), established that the 2000 amendment to Federal Rule of Evidence 701 was not intended to prohibit lay witness opinion testimony based on specialized knowledge that had traditionally been considered admissible.  We note that Dr. Bacon's briefs on appeal cite not a single case holding inadmissible lay opinion testimony similar to that of pharmacist Eskew. Especially in light of our Tampa Bay decision, we cannot conclude that there is any obvious or plain error.  In addition, we do not believe that Dr. Bacon has established the third prong of the plain error analysis: he has not shown that there is a reasonable probability that the result would have changed had pharmacist

8

Eskew not so testified.  The evidence that Dr. Bacon knew what he was doing was very substantial, if not overwhelming.

### VII.  DR. MBANEFO'S CHALLENGE TO THE DISTRICT COURT'S DRUG QUANTITY FINDINGS

Finally, we readily reject Dr. Mbanefo's argument that the district court was clearly erroneous in its findings with respect to the drug quantity for which Dr. Mbanefo should be held accountable.  Contrary to Dr.  Mbanefo's argument that there was no reliable evidence that most of Dr. Mbanefo's prescriptions for Oxycodone and Alprazolam were illegitimate, the district court found that an "overwhelming number" of Dr. Mbanefo's prescriptions were illegitimate.  We conclude that there is ample evidence to support the district court's findings with respect to drug quantity, and thus that his findings are certainly not clearly erroneous.  There was very substantial, if not overwhelming, evidence that the Columbus clinic at which Dr. Mbanefo worked had many of the warning signs and "red flags" of a "pill mill" operation.  There was similarly strong evidence that Dr. Mbanefo was aware of the same, expressing concern not only to Agent Charles Sikes in his June 7, 2013, telephone conversation, but also to Junior Biggs.   Of course, the two expert doctors persuasively testified that the prescriptions Dr. Mbanefo wrote for the eight patient files that they examined were illegitimate, both in the excessive amount and in the combination of Oxycodone and Alprazolam. And there was sufficient evidence that Dr. Mbanefo's prescriptions written for

9

other patients were similar such that the district court's findings with respect to the quantity for which Dr. Mbanefo should be held accountable is far from clearly erroneous.

For the foregoing reasons, we reject the Defendants' challenges to their convictions and sentence.

AFFIRMED.