[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13440
Non-Argument Calendar

_____

D.C. Docket No. 3:11-cr-00081-MMH-JBT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KESSLER HOLZENDORF,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 14, 2014)

Before ED CARNES, Chief Judge, TJOFLAT and JORDAN, Circuit Judges.

PER CURIAM:

After a jury trial, Kessler Holzendorf was convicted on one count of conspiracy to commit mail and wire fraud, 15 substantive counts of mail fraud, and 15 substantive counts of wire fraud. He was sentenced to 48 months imprisonment and ordered to pay $98,160 in restitution. The district court also entered a $1,500,000 forfeiture judgment against Holzendorf for which he and several of his coconspirators were jointly and severally liable. He appeals his convictions and sentence on a number of grounds.

I.

The government presented substantial evidence at trial establishing that Holzendorf and several coconspirators operated an extensive mortgage fraud scheme in Florida from 2006 to 2007. As part of their scheme, Holzendorf and his confederates recruited individuals to purchase homes and assisted those individuals in filling out loan applications that often contained several material misrepresentations. For example, the loan applications often embellished the purchaser's income and employment history, and they also stated that the purchaser intended to use the home as a primary residence even though that was almost always false.

The scheme was designed to make it possible for the purchasers to get "keys and cash" at closing. Although new homeowners typically cannot get cash back at closing because they do not have any equity built up in the property, Holzendorf's

scheme circumvented that restriction by including in the purchase agreements a purchase price that was greater than the amount that the seller was actually asking for the property. The false price was reflected in addendums to the purchase agreements, which directed the lender to pay Home Improvement & Repair by Design (HIRD), a company owned by Holzendorf, between $50,000 and $250,000 for the installation of a pool or other improvements on the property. All of the participants in Holzendorf's scheme knew that the listed improvements would never be made. After closing, HIRD would receive payment from the lender in the amount listed in the purchase agreement addendum, and Holzendorf would then kick back most of that money to the purchaser, though he kept a portion as a convenience fee.

II.

Holzendorf raises several issues challenging his convictions and sentence. First, he contends that his indictment was constructively amended or, in the alternative, that there was a prejudicial variance between the facts proved at trial and the facts alleged in the indictment. Second, he asserts that the district court abused its discretion when it denied his motion for a bill of particulars outlining the specific misrepresentations that were made to the victims. Third, he claims that the district court abused its discretion when it refused to give three of his requested jury instructions. Fourth, he contends that the district court erred in ordering

3

restitution because the government failed to carry its burden of showing that the victim seeking restitution suffered a pecuniary loss.  Finally, Holzendorf asserts that the district court erred when it entered a forfeiture order based on the gross proceeds from the mortgage fraud scheme.[1]

### A.

Holzendorf makes two arguments concerning his indictment.  He contends that the government constructively amended his indictment by prosecuting him based on a scheme "of getting the keys to a house and a bundle of cash," even though such a scheme "[did] not appear in the indictment."  In the alternative, he contends that there was a material variance from his indictment because it alleged only that Holzendorf and his coconspirators misrepresented to lenders that the purchasers planned to use the homes as a primary residence, but the government then relied on additional misrepresentations to bolster its evidence of fraud.

Holzendorf did not raise those arguments before the district court, so we review only for plain error.  United States v. Madden, 733 F.3d 1314, 1321 (11th Cir. 2013); United States v. Dennis, 237 F.3d 1295, 1300 (11th Cir. 2001).  To prevail, he must show that (1) an error occurred; (2) that error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  United States v. Romano, 314 F.3d

---

[1] Holzendorf also challenges several of the district court's evidentiary rulings, but his arguments about them are not persuasive and do not merit discussion.

4

1279, 1281 (11th Cir. 2002).  A constructive amendment occurs "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990).  By contrast, a variance occurs where "the evidence produced at trial differs from what is alleged in the indictment."  Id. at 633.

Holzendorf has not met his burden under plain error review because he has failed to show that an error even occurred.  The government did not constructively amend his indictment by characterizing the fraudulent scheme to the jury as one in which a buyer got "keys and [some] cash" when purchasing a home.  Instead, the references to "keys and [some] cash" simply served as shorthand to describe the scheme, which was alleged with specificity in the indictment.  Holzendorf has also failed to show that there was a variance between the evidence produced at trial and the scheme alleged in the indictment.  The indictment alleged that the loan documents in question included "material misrepresentations [that] included, but were not limited to, that the property would be used by the buyer/borrower as his/her primary residence when, in fact, the property was not going to be used as the buyer's/borrower's primary residence," (emphasis added).  Contrary to Holzendorf's assertion, the indictment did not limit the type of misrepresentations that the government sought to prove and the government's evidence did not prove

5

a crime different from the one alleged in the indictment.  There was no constructive amendment or variance.  See Keller, 916 F.2d at 633–34.

### B.

Holzendorf's next contention is that the district court erred by denying his request for a bill of particulars.  We review the district court's denial of that request for a clear abuse of discretion.  United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985).  The purpose of a bill of particulars is to "inform[] a defendant of the nature of the charges against him so that he will have sufficient detail to prepare for [his] defense, to avoid or minimize the danger of surprise at trial, and to enable him to plead double jeopardy" in a later prosecution for the same offense.  United States v. Perez, 489 F.2d 51, 70–71 (5th Cir. 1973).[2]  A defendant may not request a bill of particulars "to obtain a detailed disclosure of the government's evidence prior to trial," id. at 71, or to acquire "information which is already available through other sources," United States v. Martell, 906 F.2d 555, 558 (11th Cir. 1990) (quotation marks omitted).  To show an abuse of discretion, a defendant must establish that he was actually surprised at trial and that the denial of the request for a bill of particulars prejudiced his substantial rights.  United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

In this case, the district court did not abuse its discretion by denying Holzendorf's motion. Holzendorf sought a bill of particulars detailing every single material misrepresentation the government intended to show at trial. That request was nothing more than a thinly veiled attempt to have the government make a detailed disclosure of the evidence that it planned to present at trial. That is not an appropriate basis for seeking a bill of particulars. See Perez, 489 F.2d at 71. Regardless, Holzendorf cannot show that he was actually surprised at trial because his indictment described the nature of the fraudulent scheme and the government included in its response in opposition to his motion a list of nine types of misrepresentations that it intended to prove at trial. See Colson, 662 F.2d at 1391. Not only that, but the information that Holzendorf sought was already available from other sources. See Martell, 906 F.2d at 558. He could have acquired that information by reviewing his coconspirators' trial transcripts and plea agreements, which included several specific examples of misrepresentations made in the transactions that were at issue in Holzendorf's trial. See id. The district court did not abuse its discretion.

C.

Holzendorf also contests the district court's refusal to give three of his requested jury instructions. First, he asked that the jury be instructed on a good faith defense to allegations of fraud. Second, he sought to have the court give the

jury an instruction on corporate knowledge because part of his defense was that the victim lenders were knowing participants in his alleged fraud scheme.  Third, he requested that the court instruct the jury on his theory of defense.  We review the district court's actions for an abuse of discretion.  United States v. McQueen, 727 F.3d 1144, 1154 (11th Cir. 2013).  We will find reversible error only if (1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) the failure to give it seriously impaired the defendant's ability to defend himself.  United States v. Martinelli, 454 F.3d 1300, 1309 (11th Cir. 2006).

The district court did not abuse its discretion when it refused to instruct the jury as Holzendorf requested.  First, with respect to the good faith defense, that instruction was substantially covered by the district court's jury instructions on intent, which stated that the jury could not convict Holzendorf without finding that he acted with intent to defraud.  Second, the corporate knowledge instruction would not have assisted the jury in resolving an issue presented to it because the jury was tasked with determining whether Holzendorf acted with intent to defraud, not whether the lenders knew about the fraud.  See United States v. Chirinos, 112 F.3d 1089, 1101 (11th Cir. 1997) ("The district court, however, is not required to give the requested jury instruction if it would not have assisted the jury in resolving the issues presented to it.").  And in any event, the jury could have

8

convicted Holzendorf even if it found that the lenders had not been deceived by his fraud.  See Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991) ("[T]he government can convict a person for mail or wire fraud even if his targeted victim never encountered the deception — or, if he encountered it, was not deceived."), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S.Ct. 2131 (2008).  Finally, with regard to the jury instruction on Holzendorf's theory of defense, nothing prevented him from arguing his defense theory to the jury during closing arguments, and the district court's refusal to give a specific instruction concerning his theory did not seriously impair his defense.  The district court did not abuse its discretion.  Martinelli, 454 F.3d at 1309.

## D.

Holzendorf challenges the district court's restitution order, contending that the government failed to prove by a preponderance of the evidence that one of the victim lenders — CitiMortgage, Inc. — suffered a $98,160 pecuniary loss that would entitle it to restitution.  "We review de novo the legality of an order of restitution, but review for abuse of discretion the determination of the restitution value of lost or destroyed property.  We review for clear error factual findings underlying a restitution order."  United States v. Valladares, 544 F.3d 1257, 1269 (11th Cir. 2008) (quotation marks omitted).  "The government bears the burden of

9

demonstrating the amount of the victim's loss by a preponderance of the evidence." United States v. Futrell, 209 F.3d 1286, 1290 (11th Cir. 2000).

In this case, the district court did not err in ordering Holzendorf to pay $98,160 in restitution to CitiMortgage. In support of the restitution order, the government presented an affidavit from a CitiMortgage representative who testified that CitiMortgage held a second mortgage on one of the properties involved in Holzendorf's scheme. The affidavit stated that CitiMortgage had suffered a complete loss of $98,160 on that second mortgage after a foreclosure on a first mortgage on the property that was fraudulently obtained through the scheme. In opposition, Holzendorf presented evidence showing only that CitiMortgage was not the holder of the first mortgage that was foreclosed. He did not present any evidence calling into question CitiMortgage's assertion that because of the fraud it suffered a complete loss on the second mortgage taken out on the property. Because the government presented unrefuted evidence that CitiMortgage was harmed by Holzendorf's fraud, the district court did not clearly err in concluding that CitiMortgage was a victim entitled to restitution under the Mandatory Victims Restitution Act of 1996. See 18 U.S.C. § 3663A(a)(2) (defining "victim" under the statute). In addition, the government did not clearly err by relying on the CitiMortgage affidavit to find that the loss amount was $98,160.

E.

Holzendorf's final challenge relates to the district court's forfeiture judgment, which held him and several of his coconspirators jointly and severally liable for a forfeiture amount of $1,500,000. He contends that the district court erred by determining the forfeiture amount based on the gross proceeds from his fraudulent scheme.[3] He asserts that the district court instead should have reduced the $1,500,000 figure to reflect that some of the fraudulent loans had been paid off or otherwise satisfied without financial loss to the victims.

The criminal forfeiture statute, 18 U.S.C. § 982, governs the forfeiture of property involved in or traceable to the commission of certain enumerated offenses. Holzendorf's crimes are not among those enumerated offenses. Nevertheless, the government could still seek a forfeiture order in this case because 28 U.S.C. § 2461(c) provides that, in criminal cases, courts shall order forfeiture through the civil forfeiture statute, 18 U.S.C. § 981, when no specific provision of the criminal forfeiture statute applies. When that approach is taken, the district court is required to follow the criminal forfeiture procedures set out in 21 U.S.C. § 853, with the exception of those procedures in § 853(d). See 28 U.S.C. § 2461(c).

---

[3] There is no dispute concerning the district court's calculation of the gross proceeds from Holzendorf's scheme.

11

The district court did not err by entering a forfeiture judgment in the amount of the gross proceeds because that is just what § 853 requires. See United States v. Keeling, 235 F.3d 533, 537 (10th Cir. 2000) ("[F]or purposes of § 853, 'proceeds' contemplates gross proceeds . . . ."); United States v. McHan, 101 F.3d 1027, 1042 (4th Cir. 1996) (same); cf. United States v. Browne, 505 F.3d 1229, 1281 (11th Cir. 2007). Holzendorf's argument relies on the procedure for determining "proceeds" under § 981 — the civil forfeiture statute. See 18 U.S.C. § 981(a)(2)(C) ("In cases involving fraud in the process of obtaining a loan or extension of credit, the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim."). However, as we have just noted, § 2461(c) requires a district court ordering forfeiture under that provision to follow the procedures provided for in § 853, not the procedures laid out in § 981. Holzendorf's challenge fails.

**AFFIRMED.**

12