FILED
United States Court of Appeals
Tenth Circuit

March 11, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 15-2015

KEITH MICHAEL COURTNEY,

Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:11-CR–2860-JB-1)**

---

Madeline Cohen, Assistant Federal Public Defender (and Virginia L. Grady, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant - Appellant.

James R.W. Braun, Assistant United States Attorney (and Damon P. Martinez, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before **KELLY**, **BRISCOE**, and **HARTZ**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant Keith Courtney was convicted, after a jury trial, of three counts of wire fraud under 18 U.S.C. § 1343. He was sentenced to 24

months' imprisonment followed by three years' supervised release and ordered to forfeit $1,601,825.84, the full value of the fraudulent wire transfers at issue in the underlying case. In addition, the court imposed $493,230.88 in restitution. On appeal, Mr. Courtney argues that (1) the forfeiture order must be reduced by the amount the lenders received from the properties through mortgage payments and the sale of the properties, and (2) he should have been allowed to inform the jury of the possible sentence and its power to acquit him if they believed the conviction would be unjust. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we reverse on the first argument and affirm on the second.

Background

Mr. Courtney, owner of Black Diamond Construction Co., obtained construction loans for two luxury homes but was unable to find buyers when the homes were completed. Without buyers, Mr. Courtney could not continue work on his other projects.

Justin Johns, a mortgage broker with an affiliated company, suggested he and Mr. Courtney reach out to straw buyers with good credit ratings and ask to use their identities to purchase the luxury homes. In exchange for the use of the straw buyers' identities, Mr. Courtney promised to make all of the mortgage payments until the homes resold and give the borrowers various credits valued at

$5,000. The loan documents falsely stated that the borrowers intended to live in the homes. As might be expected, this plan ultimately failed; Mr. Courtney was unable to make the mortgage payments and the homes were eventually sold for a loss. Mr. Johns pled guilty and testified against Mr. Courtney. Mr. Courtney, together with Mr. Johns, caused a total of $1,601,825.84 in fraudulent mortgage wire transfers which resulted in an actual loss of $772,265.17 to the lending institutions.

The primary issue in this appeal is the forfeiture judgment entered by the district court against Mr. Courtney. In the initial indictment, the government notified Mr. Courtney it would seek forfeiture for each of his three counts of wire fraud under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. When determining the forfeiture amount, the government and Mr. Courtney agreed that the court should use the definition of "proceeds" found in 18 U.S.C. § 981(a)(2)(A). The parties disagreed on how "proceeds" should be interpreted and the court ultimately determined Mr. Courtney was required to forfeit the entire amount of the fraudulent mortgage wire transfers.

On appeal, both parties' positions have shifted. The government urges us to apply 21 U.S.C. § 853, which defines "proceeds" in a manner that would support the amount in the district court's forfeiture order. Mr. Courtney argues that the court must apply 18 U.S.C. § 981(a)(2)(C) pursuant to the statutory scheme under which he was indicted and calculate "proceeds" as the actual loss

incurred by the lenders.

Discussion

A.    Waiver

The government correctly contends, and Mr. Courtney's counsel agreed at oral argument, that the plain error standard applies because Mr. Courtney did not argue § 981(a)(2)(C) limits the forfeiture order before the district court.  Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 732-36 (1993).  On appeal, the government urges us to find that Mr. Courtney has waived this claim because his opening brief mistakenly recited that our review should be de novo.  Mr. Courtney did not address plain error until his reply brief.

The government relies upon Richison v. Ernest Group, Inc., 634 F.3d 1123, 1128-31 (10th Cir. 2011), in which we rejected an argument that plain error should not apply to forfeited claims that were purely legal and required no new fact finding.  After the holding, we stated:

> Before us, however, Mr. Richison hasn't even attempted to show how his new legal theory satisfies the plain error standard.  And the failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court.

Id. at 1130-31.  We think that Richison is readily distinguishable.

First, Richison is a civil case.  We recognize that in all cases, the "burden

- 4 -

of establishing plain error lies with the appellant," however this burden is "extraordinary and nearly insurmountable" in civil cases. Somerlott v. Cherokee Nation Distribs., Inc., 686 F.3d 1144, 1151 (10th Cir. 2012) (internal quotation marks and alterations omitted). Due to the interests at stake in a criminal case, the burden tends to be somewhat less. See Johnson v. United States, 520 U.S. 461, 465-66 (1997) (noting that the plain error standard in the criminal context is somewhat "mitigated" by Fed. R. Crim. P. 52(b)). Recognizing that the application of Rule 52(b) is a matter of sound discretion, Olano, 507 U.S. at 732, we seriously doubt that Richison should be interpreted to supply a hard and fast rule displacing that discretion in direct criminal appeals.

Second, in Richison, Mr. Richison did not "even attempt" to address plain error. 634 F.3d at 1125. Conversely, in the present case, the government made its plain error argument in its response brief and Mr. Courtney argued plain error fully in his reply brief. We have asked, "at what point on appeal must an appellant argue for plain error and its application?" but have yet to provide an answer. United States v. MacKay, 715 F.3d 807, 831 (10th Cir. 2013). We need not decide that issue today other than to state that Mr. Courtney's failure to argue plain error in his opening brief appears to be a product of mistake (more akin to a forfeiture, not a waiver) that was promptly corrected in the reply brief. We also note that the government did not seek leave to file a sur-reply in response. Accordingly, when an error is obvious enough and satisfies Rule 52(b), an

- 5 -

appellate court, in its discretion, may recognize the error notwithstanding briefing deficiencies. See United States v. Zander, 794 F.3d 1220, 1232 n.5 (10th Cir. 2015); MacKay, 715 F.3d at 831 n.17 ("An appellant certainly would benefit from a more developed argument if he acknowledged forfeiture in his opening brief, but we do not discount the possibility that we may consider a plain error argument made for the first time in an appellant's reply brief."); United States v. Annabi, 746 F.3d 83, 86 (2d Cir. 2014).

Of course, counsel always has a responsibility to identify where the precise issue raised on appeal was raised below and ruled upon. 10th Cir. R. 28.2(C)(2). That, in itself, may identify the need for a plain error discussion. Nor do we discount the rule that ordinarily issues not adequately briefed in the opening brief will not be reviewed. We merely hold that these principles, in and of themselves, do not supplant the plain error analysis envisioned by Congress and the Supreme Court.

B.     Plain Error

Appellate courts have authority to recognize a "plain error that affects substantial rights" even in cases where the error was not brought to the district court's attention. Fed. R. Crim. P. 52(b). A court "will notice the alleged error and grant the appellant relief only when four requirements are met: (1) an error occurred; (2) the error is plain or obvious; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of

judicial proceedings." United States v. Pablo, 696 F.3d 1280, 1287 (10th Cir. 2012); see also Olano, 507 U.S. at 730-32. Of these four elements, only the first two appear to be challenged by the government on appeal. To satisfy the first two elements, assuming there was an error, it must be so clear or obvious that it could not be subject to any reasonable dispute. Puckett v. United States, 556 U.S. 129, 135 (2009). We have previously held that an improperly calculated restitution award satisfies the third and fourth elements of the plain error standard. See United States v. Smith, 156 F.3d 1046, 1057 (10th Cir. 1998). Regardless of whether it is in the restitution or forfeiture context, an order to exact a material amount beyond what a statute permits affects a defendant's substantial rights and undermines the fairness of the judicial proceeding.

C.     Forfeiture

     1. Statutory Scheme

     If the government intends to pursue a forfeiture, Federal Rule of Criminal Procedure 32.2(a) requires that the indictment "contain[] notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." The indictment in this case made clear that the government would seek forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. To understand how these provisions apply to Mr. Courtney's wire fraud conviction, we must take somewhat of a circuitous route. Section 981(a)(1)(C) allows for the forfeiture of any property or proceeds

traceable to an offense constituting a "specified unlawful activity."  "Specified

unlawful activity" is defined in 18 U.S.C. § 1956(c)(7).  Under § 1956(c)(7)(A), a

"specified unlawful activity" includes any offense listed in 18 U.S.C. § 1961(1).

Among the offenses listed § 1961(1) is § 1343 – the wire fraud statute.

But there is a problem – 18 U.S.C. § 981 (a)(1)(C), the basis of our

analysis, is a civil forfeiture statute.  Mr. Courtney's case, however, is criminal.

This is where 28 U.S.C. § 2461(c) comes into play.  Section 2461(c) is read as a

"'gap-filler' between civil and criminal forfeiture, in that it permits criminal

forfeiture when no criminal forfeiture provision applies to the crime charged

against a particular defendant but civil forfeiture for that charged crime is

nonetheless authorized."  United States v. Vampire Nation, 451 F.3d 189, 199 (3d

Cir. 2006).  Up to this point, neither party challenges the analysis.

Because the indictment cites 18 U.S.C. § 981(a)(1)(C), the district court

determined that the government's forfeiture was defined by 18 U.S.C.

§ 981(a)(2)(A).  Neither party contested this determination.  On appeal, both

parties, believing the district court erred, urge this court to apply different

provisions.

2. Plain Language

The government argues 21 U.S.C. § 853 should apply.  To reach this

conclusion, the government refers to the indictment and relies on the language

found in the "gap-filler" statute: "The procedures in section 413 of the Controlled

Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding. . . ." 28 U.S.C. § 2461(c). The government's only support for its proffered interpretation of the statute is a cursory and unpublished opinion from the Eleventh Circuit. See United States v. Holzendorf, 576 F. App'x 932 (11th Cir. 2014) (unpublished).

Although the government is correct that § 2461(c) references 21 U.S.C. § 853, it ignores the limitation on § 853's application. Only the *procedural*, not substantive, provisions of § 853 apply in a criminal forfeiture proceeding. While the definition of "proceeds" found in § 853 contemplates gross proceeds, a definition is a substantive, not a procedural, element, rendering it inapplicable in the current case. See Substantive Law, Black's Law Dictionary (10th ed. 2014) (defining substantive law as "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties"). As a result, the government's argument fails.

Mr. Courtney argues that 18 U.S.C. § 981(a)(2)(C) should apply. Section 981(a)(2) contains three subsections; (A), (B), and (C). Each subsection defines the term "proceeds" slightly differently depending on the underlying unlawful activity. The district court applied § 981(a)(2)(A) which defines "proceeds" for "cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes." To read only subsection A is an incomplete reading of the statute. Had the district court read § 981(a)(2) in its

- 9 -

entirety, it would have encountered § 981(a)(2)(C) which applies specifically to "cases involving fraud in the process of obtaining a loan or extension of credit." The language could not be more applicable to the present case. Section 981(a)(2)(C) instructs that when it applies, "the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied." In cases like this, where the statutory language is clear and obvious, plain error is apparent despite no case exactly on point. See United States v. Powell, 767 F.3d 1026, 1035 (10th Cir. 2014). Though the parties should direct a district court to the applicable statutory provision, a district court must apply the correct law.

3. Case Law

Even if the plain language were not enough, and we hold that it is, case law supports § 981(a)(2)(C)'s application. We have specifically addressed § 981(a)(1)(C)'s application and held that not every "specified unlawful activity" subject to forfeiture under § 981(a)(1)(C) "also must be one of the 'unlawful activities' of subsection (A) to which the gross receipts definition of 'proceeds' is applied." United States v. Nacchio, 573 F.3d 1062, 1088 (10th Cir. 2009). Simply because something is a "specified unlawful activity" under § 981(a)(1)(C) does not automatically render it an "unlawful activity" under § 981(a)(2)(A). Id. at 1089. Our precedent instructs us to read the statute in its entirety. Id. at 1089-90. This confirms § 981(a)(2)(C)'s application. See also Annabi, 746 F.3d at 86.

D.    Jury Nullification

On appeal, Mr. Courtney seeks to preserve the argument that "he had the right to inform the jury it had the power to acquit him if it believed a conviction to be unjust and to tell the jury about the possible sentence he would receive if convicted." In a lengthy exposition, the district court correctly noted that the role of the Sixth Amendment, like many other portions of our Constitution, has changed over time. However, rather than embarking on a winding and uncertain journey into the minds of the framers, we must follow Supreme Court and Tenth Circuit precedent. Therefore, we state once again that "a criminal defendant is not entitled to have the jury instructed that it can, despite finding the defendant guilty beyond a reasonable doubt, disregard the law." United States v. Rith, 164 F.3d 1323, 1338 (10th Cir. 1999). Moreover, it is firmly established that when the jury has no sentencing function, as was the case here, it "should reach its verdict without regard to what sentence might be imposed." Rogers v. United States, 422 U.S. 35, 40 (1975).

AFFIRMED in part and REVERSED in part. Upon remand, the district court should vacate the forfeiture order and enter one consistent with our opinion.

- 11 -