**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**May 27, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PATRICK LEE ADAMS,

    Defendant - Appellant.

No. 23-6121
(D.C. No. 5:22-CR-00411-SLP-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT[*]**
_____

Before **MATHESON**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Patrick Adams appeals his conviction for possessing a firearm in violation of 18 U.S.C. § 922(g)(1). He contends that the government's closing arguments were plainly improper because they diluted the beyond-a-reasonable-doubt standard and that § 922(g)(1) is unconstitutional. We reject those challenges and affirm Adams's conviction.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

**Background**

The events underlying this appeal unfolded at an Oklahoma City apartment complex one night in July 2022. Shawn McLeod-Daves, a private security guard for the complex, responded to reports of a man "looking through vehicles and knocking on doors." R. vol. 3, 12. He found Adams wandering around the property and twice told him to leave. Later that night, McLeod-Daves parked his security truck near an exit gate, and Adams drove up to him. Given their previous interactions, McLeod-Daves told Adams to exit the car and detained him for trespassing. McLeod-Daves called for back-up, and when police arrived, they found Adams handcuffed near his car and a handgun visible on the driver's side floorboard through the open car door. Adams had a prior felony conviction, so he was charged with possessing a firearm in violation of § 922(g)(1).

At trial, the jury heard two competing versions of the interactions between McLeod-Daves and Adams. McLeod-Daves testified that during their encounter, Adams pointed a gun at him and then dropped it on the floorboard. A security guard corroborated that McLeod-Daves's call for back-up mentioned a weapon, and police confirmed that they recovered a handgun—wrapped in Adams's phone-charger cord—from the driver's side floorboard.

Adams, for his part, explained that he had been visiting friends at the complex but couldn't drive home because he had lost his keys. When he found them, he returned to his car and tried to leave, but McLeod-Daves stopped him. Adams

testified that he did not know there was a gun in the car and certainly did not hold it or point it at the security guard during the encounter.

Adams's girlfriend testified that the gun was hers. She said she had driven Adams's car to work earlier that day and left the gun under the passenger's seat during her shift. When she returned the car to him, she forgot to take the gun with her, so it was still under the passenger's seat when Adams drove to his friend's place. On the witness stand, Adams theorized that a security guard moved the gun from the passenger's side to the driver's side while he was handcuffed.

In closing arguments, the prosecutor emphasized that the two stories were irreconcilable, telling the jury "to make the decision as to what is reasonable." R. vol. 3, 329. And despite repeatedly acknowledging the government's burden to prove Adams's guilt beyond a reasonable doubt, the prosecutor also stated that even though the defense was "attempting to come up with some type of doubt, . . . they cannot get to beyond a reasonable doubt." *Id.* at 330. Then, responding to Adams's testimony that he did not know there was a gun in the car, the prosecutor reminded the jury that it was "the voice of reason" and would "decide whether or not that's reasonable." *Id.* at 335. The prosecutor continued by telling the jury that it had "to decide what the more reasonable story is"—Adams's version or the government's. *Id.* In a similar vein, the prosecutor stated that Adams was "not going to say he knew anything about a firearm that night," and the jury would have to "decide whether that's reasonable or whether it's convenient." *Id.* at 336. Adams did not object to these arguments.

3

During its seven-hour deliberations, the jury submitted several notes to the district court. First, the jury requested a transcript of a security guard's testimony; the district court responded that the jury could not review transcripts during deliberations. Next, the jury wrote that it was unable to reach a decision; the district court gave a modified *Allen*[1] charge and asked the jury to continue deliberating. Finally, the jury asked the district court to "re[]define 'proof beyond a reasonable doubt'"; the district court referred the jury to the beyond-a-reasonable-doubt instruction. R. vol. 1, 196. That instruction read:

> The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any reasonable doubt concerning the defendant's guilt.
>
> A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you think that there is a real possibility that the defendant is not guilty, you must give the defendant the benefit of the doubt and find the defendant not guilty.

---

[1] "An *Allen* instruction is, in effect, a charge given by a trial court that encourages the jury to reach a unanimous verdict so as to avoid a mistrial." *United States v. McElhiney*, 275 F.3d 928, 935 (10th Cir. 2001) (citing *Allen v. United States*, 164 U.S. 492 (1896)).

R. vol. 3, 314–15. The jury then returned a guilty verdict.

Adams appeals.

## Analysis

### I.    Prosecutorial Statements

Adams's primary challenge on appeal is that the government's closing arguments violated his "constitutionally rooted presumption of innocence" by misstating the beyond-a-reasonable-doubt standard. *United States v. Starks*, 34 F.4th 1142, 1158 (10th Cir. 2022) (quoting *Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990)). He did not object to those arguments at trial, so we review for plain error. *United States v. Anaya*, 727 F.3d 1043, 1053 (10th Cir. 2013). Under that standard, "reversal is only warranted where there is '(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Starks*, 34 F.4th at 1157 (quoting *United States v. Portillo-Vega*, 478 F.3d 1194, 1202 (10th Cir. 2007)). Because Adams asserts constitutional error, "[w]e 'apply the plain[-]error rule less rigidly.'" *United States v. Dalton*, 918 F.3d 1117, 1130 (10th Cir. 2019) (quoting *United States v. Weeks*, 653 F.3d 1188, 1198 (10th Cir. 2011)). We first address whether there was any error, plain or otherwise, and then consider whether any error affected Adams's substantial rights.

### A.    Plain Error

To begin, Adams asserts that the government's closing arguments introduced constitutional error by diluting the "beyond a reasonable doubt" standard.

Prosecutorial statements "cross[] the line into improper advocacy" if, as relevant here, they "'misstat[e] the law.'" *Starks*, 34 F.4th at 1158 (quoting *United States v. Christy*, 916 F.3d 814, 825 (10th Cir. 2019)). And an error is plain if it is "so clear or obvious that it could not be subject to any reasonable dispute." *United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016).

Adams specifically objects to the government's suggestion that the jury decide which version of events was "more reasonable." Aplt. Br. 21 (quoting R. vol. 3, 335). He argues that this statement impliedly told the jury it could convict Adams based on a preponderance of the evidence. He also takes issue with the government's statement that Adams "cannot get to beyond a reasonable doubt," which suggested it was Adams's burden to prove his defense. R. vol. 3, 330. Together, Adams says, these statements infringed upon his due-process right to be "protect[ed] . . . against conviction 'except upon proof beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).

Evaluating the government's statements "in context," however, we disagree with Adams's assessment. *United States v. Franklin-El*, 555 F.3d 1115, 1125 (10th Cir. 2009) (quoting *United States v. Kravchuk*, 335 F.3d 1147, 1153 (10th Cir. 2003)). The government repeatedly acknowledged its burden to prove its case beyond a reasonable doubt, and the jury received instructions on the correct application of that standard. Against that backdrop, the government's comments about reasonableness simply asked the jury to use common sense. And there is nothing improper in that. *See Webb v. United States*, 347 F.2d 363, 364 (10th Cir. 1965)

6

("[T]he jury's function is broad enough to allow it to make common[-]sense inferences from proven facts.").

Similarly, the government's statement that Adams "cannot get to beyond a reasonable doubt" did not improperly shift the burden to Adams. R. vol. 3, 330. Rather, it was an inelegant attempt to argue that Adams had not raised a reasonable doubt as to his guilt. And reading the government's entire closing—which just a few sentences earlier acknowledged the court's instruction on reasonable doubt and its requirement that the jury be "firmly convinced of the defendant's guilt"—that nuance was clear. *Id.* at 329.

As such, we are not convinced that the government's closing misstated the law. And even if it did, the misstatement would need to be "so clear or obvious that it could not be subject to any reasonable dispute." *Courtney*, 816 F.3d at 684. Adams can't show that clarity here. Despite his attempts to draw parallels with favorable precedent, this case is not *Monk v. Zelez*, where the jury heard a faulty definition of "beyond a reasonable doubt." 901 F.2d 885, 889 (10th Cir. 1990). Nor is it *Starks*, where the prosecutor directly contradicted settled precedent conferring a presumption of innocence to every defendant. *See* 34 F.4th at 1158. Any error in the government's closing was not plain.

## B.    Substantial Rights

Even if the government's closing was plainly improper, Adams would need to show that it "affect[ed his] substantial rights." *Starks*, 34 F.4th at 1157 (quoting *Portillo-Vega*, 478 F.3d at 1202). A defendant meets this standard if he or she

7

"demonstrate[s] that an error was prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (quoting *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1138 (10th Cir. 2017)). And "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008)).

Adams argues that such a probability exists here, pointing to weaknesses in the government's evidence and the jury's difficulty reaching agreement to suggest that the verdict was a close call. And if it was, Adams argues, the jury's apparent confusion about the government's burden (as evidenced by its request for an alternative definition of "beyond a reasonable doubt") could have easily swayed the outcome. We disagree for several reasons.

To begin, the statements at issue played a minimal role in the government's case. We evaluate prosecutorial misconduct in "the context of the entire trial." *Id.* at 1158 (quoting *United States v. Vann*, 776 F.3d 746, 760 (10th Cir. 2015)). And we are reluctant to find prejudice where the challenged remarks constituted "only a small portion of the [g]overnment's entire closing argument," as they did here. *United States v. Sierra-Ledesma*, 645 F.3d 1213, 1227 (10th Cir. 2011).

What's more, the district court cured any potential prejudice with its reasonable-doubt instruction. "The jury is presumed to follow its instructions, even when there has been misleading argument." *Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006) (cleaned up). For that reason, we have rejected similar challenges to

prosecutorial statements where the jury received proper instructions. *See, e.g.*, *Sierra-Ledesma*, 645 F.3d at 1227 (finding any error harmless because district court "instructed the jury multiple times" on reasonable doubt). And here, the district court repeatedly directed the jury to hold the government to its burden, including twice during deliberations—once during the *Allen* charge and once by referring the jury to the beyond-a-reasonable-doubt instruction. *See United States v. Litchfield*, 959 F.2d 1514, 1521 (10th Cir. 1992) (declining to reverse for plain error where court "repeatedly emphasized" government's burden).

Adams responds that the instruction failed to cure any prejudice because it included no "quantum of proof." Aplt. Br. 31. In his view, some quantification of the reasonable-doubt standard was necessary to counteract the government's insinuation that convicting Adams required believing only that the prosecution's story was the "more reasonable" one. *Id.* at 32. But the district court used this court's pattern jury instruction, which emphasizes that the jury must be "firmly convinced" of the defendant's guilt to convict and must acquit if left with a "doubt based on reason and common sense."[2] R. vol. 3, 315; *see also* Tenth Cir. Crim. Pattern Jury Instrs. § 1.05 at 10 (2021). That "correct and comprehensible statement" of the government's burden sufficiently neutralized the government's inartful closing in this case. *United States v. Petty*, 856 F.3d 1306, 1310 (10th Cir. 2017) (quoting *United States v.*

---

[2] The district court also instructed the jury that if the court's instructions conflicted with the parties' arguments, the jury should follow the instructions, not the arguments.

*Conway*, 73 F.3d 975, 980 (10th Cir. 1995)). As such, Adams's analogy to *Starks*, 34 F.4th at 1161—where we held that a vague instruction could not cure a prosecutor's blatant misstatement of the law—is inapposite.

Finally, Adams's complaints about the timing of the government's questionable statements miss the mark. He laments that the government's closing came after the district court's instructions, so the potentially prejudicial arguments were "left ringing in the jurors' ears as they entered their deliberations." Aplt. Br. 25. That characterization omits, however, that the government reiterated the reasonable-doubt standard in its rebuttal closing and the district court twice invoked the standard during deliberations.

Considering the broader context of the government's closing and the jury instructions, we are not convinced that the prosecutor's few references to the relative reasonableness of two stories outweighed the district court's—and the parties'—repeated directions to hold the government to its burden. Accordingly, even assuming the prosecutor plainly erred in closing arguments, that error did not affect Adams's substantial rights.[3]

## II.    Constitutionality of § 922(g)(1)

Separately, Adams argues that § 922(g)(1) is unconstitutional under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), because there is no historical

---

[3] Given this conclusion, we need not reach the fourth prong of plain error or address the government's disagreement with Adams's characterization of the evidence and the jury's questions.

10

tradition of dispossessing felons, much less nonviolent ones. However, we recently reaffirmed the constitutionality of § 922(g)(1)—both on its face and as applied to nonviolent offenders—so we reject Adams's argument. *See Vincent v. Bondi*, 127 F.4th 1263, 1265–66 (10th Cir. 2025).

## Conclusion

Because the government's closing arguments do not warrant reversal under plain-error review and § 922(g)(1) is constitutional, we affirm.

Entered for the Court


Nancy L. Moritz
Circuit Judge